Wade BACKLUND, on behalf of himself and all other persons similarly situated, Plaintiff,

v.

CITY OF DULUTH, MINNESOTA, Civil Service Board of the City of Duluth, Minnesota Duane Flynn, individually, and in his official capacity as Chief of the Fire Department of the City of Duluth, Minnesota, and Karl Nollenberger, in his official capacity as Secretary of the Civil Service Board of the City of Duluth, Minnesota, Defendants.

No. Civ. 5–95–137 (DDA/RLE).

United States District Court, D. Minnesota.

Sept. 16, 1997.

Josh Jacobson, Minneapolis, MN, Peter Nickitas, Superior, WI, for Plaintiff.

M. Allison Lutterman, Assistant City, Attorney, Circle Pines, MN, for Defendants.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Plaintiff's timely Motion for Leave to Amend Complaint. See, *Rule 15(a), Federal Rules of Civil Procedure;* see also, *Pretrial Order of June 27, 1997.*

At the instance of the parties, we have considered the Motion on the basis of the parties' written submissions, and without oral argument. For these purposes, the Plaintiff appeared by Josh Jacobson, and Peter J. Nickitas, Esqs., and the Defendant appeared by M. Allison Lutterman, Assistant City Attorney.

For reasons which follow, we grant, in part, the Plaintiff's Motion to Amend.

## II. *Factual and Procedural Background*

On July 7, 1995, the Plaintiff commenced this action, with the filing of a Complaint in which he alleges that the Fire Department, for the City of Duluth, wrongfully refused to hire him, in violation of rights secured by the United States Constitution. The Plaintiff alleges that, notwithstanding his qualifications for the job openings in the Fire Department, the Department refused to hire him in favor of applicants who were familially related to existing members of the Fire Department.

On June 16, 1997, with leave of the Court, the Plaintiff filed an Amended Complaint, in which he asserts a total of six claims against the City of Duluth, and against several City officials. In his first Count, which is brought pursuant to Title 42 U.S.C. § 1983, the Plaintiff contends that the Defendants' hiring practices violate the Equal Protection Clause of the United States Constitution. His second Count asserts a similar claim under the Constitution of the State of Minnesota, while his third, fourth, fifth, and sixth Counts allege that the Defendants' subsequent failure to rectify their assertedly discriminatory hiring practices resulted in the abrogation of his equal protection rights under the Federal and State Constitutions. In his seventh Count, the Plaintiff contends that the Defendants' have violated the Minnesota Government Data Practices Act ("MGDPA") by destroying, or by allowing the destruction of, documents which related to the City's evaluation of the applicants for employment by the Fire Department. See, *Minnesota Statutes Section 13.01, et seq.*

On July 30, 1997, the Plaintiff moved to Amend his Complaint for the second time. The proposed Amended Complaint names Les Bass ("Bass") as a Defendant, in the claim which asserts a violation of Section 13.04, Subdivision 3, of the MGDPA. During the first half of 1995, Bass served as the interim Director of Finance for the City—a position which was then designated as the "responsible authority" for purposes of the MGDPA. See, *Minnesota Statutes Section 13.02, Subdivision 16.* It was during this time that the claimed violations of the MGDPA are alleged to have occurred. See, *Complaint,* ¶ 21–37. In addition, the pro-

posed amendment would include, in its prayer for relief, a demand that the City pay at least $10,000.00 in exemplary damages for assertedly willful violations of the MGDPA.

In response, the Defendants have urged us to deny the Plaintiff leave to amend his Complaint because any action against Bass, for violations of the MGDPA, would fail to state a claim upon which relief can be granted, and because the Plaintiff has failed to present *prima facie* evidence that he is entitled to plead a punitive damage claim for asserted violations of the MGDPA. See, *Defs.' Mem. Opp. Pl.'s Mot. Amend Compl.*

### III. *Discussion*

A. *The Proposed Addition of Bass as a Defendant.* The Defendants oppose the Plaintiff's effort to join Bass, as a Defendant, on the ground that the amended claim against Bass, in either his official or individual capacity, cannot withstand a Motion to Dismiss and, therefore, the claim would be futile.

■ 1. *Standard of Review.* Where, as here, a Plaintiff seeks to amend his Complaint, Rule 15(a), Federal Rules of Civil Procedure, dictates that leave to amend shall be "freely given when justice so requires." The Supreme Court has explained the purposes of Rule 15(a) as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); see also, *Thompson–El v. Jones,* 876 F.2d 66, 67 (8th Cir.1989).

Thus, although we begin with a presumption of liberality, an amendment to a pleading can

be successfully challenged on grounds of futility, if the claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted. *Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1082 (8th Cir.1993); *Weimer v. Amen*, 870 F.2d 1400, 1407 (8th Cir.1989); *Holloway v. Dobbs*, 715 F.2d 390, 392–93 (8th Cir.1983); *Norbeck v. Davenport Community Sch. Dist.*, 545 F.2d 63 (8th Cir.1976), cert. denied 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); but cf., *Karl's Inc. v. Sunrise Computers, Inc.*, 901 F.2d 657, 660 (8th Cir.1990) ("colorable showing" sufficient to withstand application of clearly frivolous rule).

2. *Legal Analysis.* With this authority as our lodestar, we test the adequacy of the Plaintiff's proposed claim against Bass, in his official capacity,[1] under the futility standard. Here, the Defendants argue that such a claim against Bass would not withstand a Motion to Dismiss because "the Act does not impose vicarious[ ] liability upon the responsible authority," and because the Plaintiff "has failed to allege any facts that would support a contention that Bass was involved in any fashion in the action which forms the basis of [the Plaintiff's] claim." *Defs.' Mem.* at 3. In light of the plain language of the MGDPA, we find the Defendants' argument unpersuasive.

██ The MGDPA imposes a number of affirmative obligations upon the government, and upon the government official who is designated as the "responsible authority." The Act mandates that the "responsible authority in every state agency, political subdivision, and statewide system shall keep records containing government data in such an arrangement and condition as to make them easily accessible for convenient use," and that "[t]he responsible authority * * * shall establish procedures, consistent with this chapter, to insure that requests for government data are received and complied with in an appropriate and prompt manner." *Minnesota Statutes Section 13.03, Subdivision 1 and 2.* Section 13.04 details the obligations that the responsible authority owes to those individuals who are the subject of collected government data, and provides, *inter alia*, as follows:

> Upon a request to a responsible authority, an individual shall be informed whether the individual is the subject of stored data on individuals, and whether it is classified as public, private or confidential. * * * The responsible authority shall provide copies of the private or public data upon request by the individual subject of the data.

*Minnesota Statutes Section 13.04, Subdivision 3.*

In accordance with an existing designation by the City of Duluth, Bass was the "responsible authority" during the events which gave rise to the Plaintiff's claim under the MGDPA. See, *Minnesota Statutes Section 13.02, Subdivision 16.* As such, he is subject to civil liability, in his official capacity, for violations of the MGDPA. See, *Minnesota Statutes Section 13.08, Subdivision 1* ("a * * * responsible authority * * * which violates any provision of this chapter is liable to a person * * * who suffers any damage as result of the violation [for] damages sustained, plus costs and reasonable attorney fees").

---

1. The Defendants argue that the proposed amendment is futile since Bass cannot be sued, in his personal capacity, under the MGDPA. In actuality, the Complaint merely lists Bass as a Defendant, but without reference to the capacity in which he is being sued. In a letter filed with the Court, however, the Plaintiff has declared that the suit was not against Bass in his personal capacity, but only in his official capacity. In any event, when a suit is commenced against a government agent for actions, which were taken under color of State law, but the Complaint fails to specify whether the suit is brought against the agent in his official, or in his personal capacity, the Court presumes that the agent was sued in his official capacity, and only in that capacity. See, e.g., *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.1990); *Kolar v. County of Sangamon*, 756 F.2d 564, 568; *Barrett v. Thomas*, 649 F.2d 1193, 1201 (5th Cir.1981), cert. denied, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982); *Collin v. Rector and Bd. of Visitors of the University of Virginia*, 873 F.Supp. 1008, 1013 n. 1 (W.D.Va.1995). Coupled with the Plaintiff's disclaimer of any interest in suing Bass in his personal capacity, the existence of this presumption obviates any need to consider whether a claim brought against Bass, in his personal capacity, would be futile, as the Amended Complaint presents no such claim.

■ The Defendants' reliance upon *Walker v. Scott County*, 518 N.W.2d 76 (Minn. App.1994), rev. denied, (Minn., August 24, 1994), is misplaced.[2] According to the Defendants, Walker stands for the proposition that an employer is not vicariously liable for violations of the MGDPA, which were committed by an employee. See, *Defs.' Mem.* at 3–4. We think this is a misreading of the decision's import. In *Walker*, a Deputy Sheriff purloined the Plaintiff's criminal records from a County-maintained computer system, and disseminated the records, for purely personal reasons, to others. *Walker v. Scott County*, supra at 78. The Court held that Scott County was not liable under the MGDPA—vicariously—because the underlying malfeasance was committed outside of the scope of the Deputy's employment. *Id.* at 79. In stark contrast to the facts in *Walker*, the proposed Amended Complaint seeks to impose liability upon Bass, as the "responsible authority," for his failure to ensure that government data was properly maintained, and produced to the persons to whom the data pertained. See, *Minnesota Statutes Sections 13.03, Subdivision 1 and 2, and 13.04, Subdivision 3.* Necessarily, we are not called upon to find, nor do we find, that Bass violated the Act, but, indisputably, Section 13.08 imposes liability upon the "responsible authority" for such failures and, if a violation occurred, then Bass could be held accountable. We conclude, therefore, that the proposed claim, which arises from alleged failures to comply with the MGDPA, is not futile, such that it "would be unable to withstand a Motion to Dismiss." *Ulrich v. City of Crosby*, 848 F.Supp. 861, 877 (D.Minn. 1994).

**B.** *The Request for Punitive Damages.* "In the case of a willful violation," the MGDPA authorizes the imposition of "exemplary damages" against "the political subdivision, statewide system or state agency," "of not less than $100, nor more than $10,000 for each violation." The Plaintiff requests leave to assert such a claim against the City of Duluth.

1. *Standard of Review.* The Plaintiff's interest in asserting a punitive damage claim, under the MGDPA, prompts a question of statutory construction that has not, as yet, been addressed by any Court—namely, whether the punitive damage provision, that is contained in Minnesota Statutes Section 13.08, supersedes, or is subject to, the regimen for pleading and proving exemplary damages that is set forth in Minnesota Statutes Sections 549.191 and 549.20.[3]

Section 549.191 serves a fundamental, gatekeeping function which rids the Courts of unfounded, or of abusive, punitive damage claims.[4] In pertinent part, Section 549.191 provides as follows:

> Upon commencement of a civil action, the complaint must not seek punitive damages. After filing the suit a party may make a motion to amend the pleadings to claim punitive damages. The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accom-

---

**2.** The Defendants also cite *S.J.S. v. Faribault County*, 556 N.W.2d 563, 566 (Minn.App.1996), rev. denied (Minn., January 21, 1997), which refused to impose liability against a County, arising under the MGDPA, based upon prosecutorial immunity—a rationale that is not here germane.

**3.** It is well settled that "[i]n the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the laws of the State of Minnesota, must generally conform to the requisites of Minnesota Statutes Sections 549.191 and 549.20." *Ulrich v. City of Crosby*, 848 F.Supp. 861, 866 (D.Minn.1994); see also, *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1256 (8th Cir. 1994), cert. denied, 513 U.S. 1198, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *Northwest Airlines, Inc. v. American Airlines, Inc.*, 870 F.Supp.

1499, 1502 (D.Minn.1994); *Security Savings Bank v. Green Tree Acceptance, Inc.*, 739 F.Supp. 1342, 1352 (D.Minn.1990); *Kuehn v. Shelcore, Inc.* 686 F.Supp. 233 (D.Minn.1988); *Fournier v. Marigold Foods, Inc.*, 678 F.Supp. 1420, 1422 (D.Minn.1988).

**4.** "As recognized by our Court, the Minnesota Legislature adopted, in 1986, the pleading requirements of Section 549.191 in order to deter certain practices in the presentment of punitive damage claims which were thought to be abusive, and in order to address a perceived insurance crisis." *Ulrich v. City of Crosby*, supra at 866–67, citing *Gobuty v. Kavanagh*, 795 F.Supp. 281, 287 (D.Minn.1992); *Kuehn v. Shelcore, Inc.* supra at 234; *Filz v. Mayo Foundation*, 136 F.R.D. 165, 174 (D.Minn.1991).

panied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages. *Minnesota Statutes Section 549.191.*

As pertinent here, Section 549.191 instructs a Court, which confronts a Motion to plead a claim of punitive damages, to examine the claim under the criteria of Section 549.20, or under whatever "other law," should provide the governing legal standard. *Id.*

In pertinent part, Section 549.20 provides:

Punitive damages shall be allowed in civil actions only upon *clear and convincing evidence* that the acts of the *defendant show deliberate disregard for the rights or safety of others.*

*Minnesota Statutes Section 549.20, Subdivision 1* [emphasis added].

For purposes of assessing punitive damages under Section 549.20:

A defendant has acted with deliberate disregard for the rights and safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

(1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

(2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

*Id.*

Under the regimen of Section 549.20, in deciding whether to allow a claim for punitive damages to be pled, the Court must search for evidence that is both "clear and convincing." "To be 'clear and convincing,' there must be 'more than a preponderance of the evidence but less than proof beyond a reasonable doubt.'" *Ulrich v. City of Crosby,* supra at 868, quoting *Weber v. Anderson,* 269 N.W.2d 892, 895 (Minn.1978). In other words, "[w]here the evidence is sufficient to

permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others, the 'clear and convincing' standard would be satisfied." *Id.,* citing *Becker v. Alloy Hardfacing & Engineering Co.,* 401 N.W.2d 655, 659 (Minn.1987).

Minnesota Statutes Section 13.08, Subdivision 1, which is entitled "Civil remedies: Action for damages," employs a different criterion for the award of exemplary damages and, most importantly, the Subdivision makes no reference to either Section 549.191, or Section 549.20. In the words of Section 13.08, Subdivision 1:

In the case of a willful violation [of the MGDPA], the political subdivision, statewide system or state agency shall, in addition [to compensatory damages], be liable to exemplary damages of not less than $100, nor more than $10,000 for each violation.

The resolution of the issue before us pivots on whether the Plaintiff must adhere to the proofs and procedures prescribed by Sections 549.191 and 549.20 before he may plead a punitive damage claim, or if he may plead a claim for punitive damages absent clear and convincing evidence for the same, and may prove that claim upon a preponderance of the evidence. See, *Carpenter v. Nelson,* 257 Minn. 424, 101 N.W.2d 918, 921 (1960) (in ordinary civil action Plaintiff has burden of proving every essential element of case, including damages, by a fair preponderance of the evidence). As would seem obvious, the Court cannot give full effect to all three of the provisions which could have application, without doing violence to some or all of one or another.

Accordingly, we look to the canons of construction, which are codified in *Minnesota Statutes Section 645,* and which include the following proviso:

When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, un-

less the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

*Minnesota Statutes Section 645.26;* see also, *Beck v. Groe,* 245 Minn. 28, 70 N.W.2d 886 (1955).

As to this aspect of our interpretive task, other Courts guide our way by holding that the general provisions of Sections 549.191 and 549.20 yield to conflicting special provisions for the imposition of punitive damages.

For example, in *Zawels v. Edutronics, Inc.,* 520 N.W.2d 520, 523–24 (Minn.App. 1994), the Minnesota Court of Appeals held that the plain language of the Trade Secrets Act, *Minnesota Statutes Section 325C.03(b),* which allows exemplary damages to be awarded upon a showing of willful and malicious conduct, "shows that the legislature did not intend the requirements of Minnesota Statutes Sections 549.191–20 to apply to exemplary damages awarded in a misappropriation of trade secrets action." But see, *Northwest Airlines, Inc. v. American Airlines, Inc.,* 870 F.Supp. 1499, 1502 (D.Minn. 1994) (applying the requirements of Sections 549.191, and 549.20 to a request for punitive damages under the Trade Secrets Act).

Similarly, we have held, consistent with precedent within this District, that a specific punitive damages provision in the Minnesota Human Rights Act ("MHRA"), displaces the requirements of Minnesota Statutes Section 549.191. See, *Ulrich v. City of Crosby,* supra at 876; *Daines v. City of Mankato,* 754 F.Supp. 681, 704 (D.Minn.1990); *Engele v. Independent School District No. 91,* 846 F.Supp. 760, 768 (D.Minn.1994). The pertinent language of the MHRA provides that "the administrative law judge may also order the respondent to pay an aggrieved party * * * punitive damages in an amount not more than $8,500," and that, "[p]unitive damages shall be awarded pursuant to section 549.20." *Minnesota Statutes Section 363.017, Subdivision 2.* In permitting a claim of punitive damages, without prior leave of the Court, the Court, in Daines, reasoned as follows:

> The court finds persuasive plaintiff's argument that the legislature's reference to

§ 549.20 in the MHRA does not result in automatic incorporation of the requirements of § 549.191 as well. The protections against excessive punitive damages awards provided by § 549.191 are not necessary in MHRA actions which are heard and decided by a hearing officer or judge.

*Daines v. City of Mankato,* supra at 704.

In *Ulrich,* we also concluded that the MHRA's specific incorporation of the Section 549.20 standards, plus the absence of any reference to Section 549.191, to be "conspicuous in its suggestion that the legislature was excluding such claims from the pleading regime of that Section." *Ulrich v. City of Crosby,* supra at 877.

> As the Court observed, in *Zawels:*
>
> [T]he legislature has the power to determine when punitive damages may be awarded in a specific cause of action. See, e.g., Minn.Stat. § 363.071 (1992) (in Human Rights Act case, "[p]unitive damages shall be awarded pursuant to section 549.20"); Minn.Stat. § 325B.08 (1992) (punitive damages may be awarded in Beer Brewers and Wholesalers Act action if court finds defendant acted in bad faith); Minn.Stat. § 181.68, subd. 1 (1992) (in wage discrimination case, exemplary damages up to amount of unpaid wages may be levied at court's discretion). The plain language of Minn.Stat. § 325C.03(b) shows that the legislature did not intend the requirements of Minn.Stat. § 549.191–.20 to apply to exemplary damages awarded in a misappropriation of trade secrets action.

*Zawels v. Edutronics, Inc.,* supra at 524.

We think that the very same may be said here. Had the Minnesota Legislature intended that the provisions of Section 549.191 apply to MGDPA punitive damage claims, it was within its power to so declare. Quite simply, we should not enact, through statutory construction, what the Legislature has, by reasonable implication, refused to legislate on its own.

Since we conclude that Section 13.08 generally conflicts with Sections 549.191 and 549.20, Minnesota law directs us to construe them, if at all possible, so as to reasonably give effect to the intent of all. See, *Minne-*

sota *Statutes Section 645.26.* We conclude that, under the circumstances presented here,[5] we can give effect to the provisions of Section 13.08, and of Section 549.191, without doing violence to either, but that such a coalescence cannot properly occur between Section 13.08 and Section 549.20.

As we have noted, Section 549.191 merely requires a party to support his Motion to amend his Complaint, so as to add a claim for punitive damages, with a *prima facie* showing that he is entitled to allege punitive damages under "section 549.20 or other law." See, *Ulrich v. City of Crosby,* supra at 867. We read the Legislature's inclusion of the phrase "or other law," as an express recognition that, in some cases, Section 549.20 will not prescribe the appropriate standard upon which to award punitive damages. By qualifying the award of punitive damages on the commission of a "willful" act, our effort to synthesize the variant provisions of Sections 13.08 and 549.191 is accomplished, faithful to the integrity of each, by requiring the pleader to present a *prima facie,* showing that Bass's purported violations of the Act were "willful." On the other hand, the conflict between the "willfulness" standard of Section 13.08—as established by a preponderance of the evidence, and the "deliberate disregard" criterion of Section 549.20—as established by "clear and convincing evidence," is irreconcilable. We, therefore, hold that Section 549.20 does not apply to claims for punitive damages arising from violations of the MGDPA but, under the facts of this case, the provisions of Section 549.191 can be compatibly blended with Section 13.08.

2. *Legal Analysis.* In fusing the provisions of Section 13.08 and 549.191, we do not reach the end of our inquiry, for we are still obligated to determine whether the Plaintiff's proposed punitive damage claim has set forth a *prima facie* showing of a purportedly "willful" violation of the MGDPA. In applying Section 549.191, "[t]he Minnesota Courts have determined that '[p]rima facie evidence

is that evidence which, if unrebutted, would support a judgment in that party's favor.' " *Ulrich v. City of Crosby,* supra at 867, quoting *Swanlund v. Shimano Indus. Corp., Ltd.,* 459 N.W.2d 151, 154 (Minn.App.1990), rev. denied (Minn., October 5, 1990); *McKenzie v. Northern States Power Co.,* 440 N.W.2d 183 (Minn App.1989). The relevant inquiry, therefore, is whether the Plaintiff has produced evidence which, if unrebutted, would support a judgment that the Defendants willfully violated the MGDPA. See, *Minnesota Statutes Section 13.08.*

The MGDPA does not contain a definition for the phrase "willful violation," and no Court has definitively articulated the meaning of that term, although the Minnesota Court of Appeals, in *Demers v. City of Minneapolis,* 486 N.W.2d 828, 832 (Minn. App.1992), did conclude that a city's conscious decision to refuse to produce citizen complaint forms, which were created during internal investigations of police misconduct, was not a "willful" violation of the MGDPA since the city officials believed that the information was exempted from the MGDPA as private personnel data. Without a statutory or judicially sanctioned meaning for the term "willful," we turn to an assessment of its ordinary meaning. According to two commonly recognized sources:

A willful act may be described as one done intentionally, knowingly, and purposely, without justifiable excuse, as distinguished from an act done carelessly, thoughtlessly, heedlessly, or inadvertently. A willful act differs from a negligent act. The one is positive and the other negative.

*Black's Law Dictionary,* at 1599 (6th Ed.1990).

\* \* \* \* \* \*

**will • ful** also **wil • ful** \* \* \* 1. Said or done on purpose; deliberate. See Synonyms at **voluntary.** 2. Obstinately bent on

---

5. Since the Plaintiff is seeking leave to amend his Complaint, in order to assert a claim for punitive damages, we need not, and do not, decide whether, notwithstanding the prohibitions of Minnesota Statutes Section 549.191, he could originally plead a claim for punitive damages without first

obtaining leave of the Court. See, *Ulrich v. City of Crosby,* 848 F.Supp. 861, 876–77 (D.Minn. 1994); *Daines v. City of Mankato,* 754 F.Supp. 681, 704 (D.Minn.1990); *Engele v. Independent School District No. 91,* 846 F.Supp. 760, 768 (D.Minn.1994).

having one's own way. See Synonyms at **unruly.**

*The American Heritage Dictionary of the English Language,* at p.2042 (3rd Ed.1992). Of course, we understand that the term "willful" "is also employed to characterize a thing done without ground for believing it is lawful or conduct marked by a careless disregard whether or not one has the right so to act." *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 54 S.Ct. at 225, 78 L.Ed. 381 (1933), overruled, in part, on other grounds, by *Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Indeed, we are aware of the adoption of that broader use of the term, by the Minnesota Court of Appeals, when confronted by a statute which did not expressly define the term. See, *In re Henry Youth Hockey Ass'n,* 511 N.W.2d 452, 456 (Minn.App.1994), modified on other grounds, 559 N.W.2d 410 (Minn.1994). In *Henry Youth,* the Court interpreted the term, in the context of revoking a gambling license, as denoting "a disregard for governing statutes and an indifference to their requirements, or a careless disregard of statutory requirements." Citing, *United States v. Illinois Centr. R.R. Co.* 303 U.S. 239, 242–243, 58 S.Ct. 533, 535, 82 L.Ed. 773 (1938); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 127, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985); *Cox v. United States Dep't of Agric.,* 925 F.2d 1102, 1105 (8th Cir.1991), cert. denied, 502 U.S. 860, 112 S.Ct. 178, 116 L.Ed.2d 141 (1991). While the adoption of such a construction would be facile, we also think that it would be wrong.

Seldom do we construe the meaning of a term in a contextual vacuum; almost always, the nuances of a term are influenced by the milieu in which it has been employed. Consequently, we look to Section 13.08, and the fabric of legislative history in which the term is framed. In 1974, when Section 13.08 was enacted, there was no general punitive damages Statute, as now codified at Section 549.20. Accordingly, the Legislature's incorporation of a "willful violation" standard for Section 13.08 exemplary damages was without a statutory precursor for punitive damages purposes. In 1978, the Minnesota Leg-islature enacted Section 549.20, and adopted a generalized "willful indifference" standard for the award of punitive damages in civil litigation. Notably, the Legislature did not adopt a mere "willful violation" standard, but expressly incorporated a criterion that would impose liability for "indifference," as opposed to volitionally affirmative acts. Equally notable is the fact that the Legislature did not modify the language of Section 13.08 when Section 549.20 was enacted.

We are confident that, if the Legislature had not intended a different meaning to apply to Section 549.20, than that intended by Section 13.08, the Legislature would have simply adopted the "willful violation" terminology of Section 13.08. Indeed, when Section 549.20 was amended, in 1990, in order to replace the "willful indifference" standard with one of "deliberate disregard," no similar modification occurred to the use, in Section 13.08, of the "willful violation" criterion. We suspect that other explanations could be advanced for separate standards, but we regard the "willful violation" standard as reflecting the Legislature's recognition that a special showing of egregious fault is essential to a finding of liability for the discretionary acts of a governmental official.

 Phrased somewhat differently, under Minnesota law, an agent of the State is protected by common law "official immunity," unless the acts of that agent were "willful or malicious." See, *Pletan v. Gaines,* 494 N.W.2d 38, 40–41 (Minn.1992) ("The common law provides that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong.'"). "In the official immunity context, willful and malicious are synonymous," and mean "nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State,* 472 N.W.2d 100, 107 (Minn.1991). Under Minnesota law, the official's immunity extends to the employing municipality. *Lommen v. City of East Grand Forks,* 522 N.W.2d 148, 150 (Minn.App.1994), rev. granted (Minn., December 2, 1994), appeal dismissed (Minn.,

August 9, 1995). Given the perspective of the official immunity doctrine, and the commonly understood meaning of the term "willful violation," we conclude that, in pinioning an entitlement to punitive damages upon a "willful violation" of the MGDPA, the Minnesota Legislature was doing no more than applying the long-recognized "official immunity" doctrine to a statutory claim under the MGDPA. Since the Act contains an express waiver of sovereign immunity, we interpret the "willful violation" standard as an express limitation on the award of punitive damages unless a showing is made that the defendant intentionally violated the MGDPA without legal justification or excuse, and that is the standard we apply here.[6]

■ In support of his motion to Amend, the Plaintiff has presented a number of deposition transcripts, and related papers, which detail the City's destruction, or misplacement, of a number of documents that are alleged to have been within the scope of the MGDPA. See, *Jacobson* Aff. Ex. A–E; *Pl.'s Mem.* at 5–6. Here, the Plaintiff has presented evidence that Duane Flynn, the Fire Chief for the City of Duluth, destroyed documents relating to Fire Department hiring decisions, without consulting anyone concerning his compliance with the MGDPA, and without consulting the City's record retention schedule for personnel documents. See, *Flynn Dep. Tran.*, at 74, 93–94, 128, 172–73; *Pl.'s Mem.* at 7. The Plaintiff further alleges, and supports with evidence, that several important City employees had not been instructed on how to comply with the MGDPA. See, *Glass Dep. Tran.*, at 19, 21, 22, 25–26; *Hendrickson Tran.*, at 20–21; *Pl.'s Mem.* at 6. Absent from his supporting papers, however, is any showing that either Bass, or any other City employee, knowingly violated the MGDPA—at best, there is an implication of negligence, inadvertence, or ignorant error. Accordingly, since the Plaintiff has not made a *prima facie* showing of an entitlement to allege a claim for punitive damages, we deny that aspect of his Motion to Amend.

---

6. While not definitively dispositive of the issue, we read the Court's holding, in *Demers v. City of Minneapolis*, 486 N.W.2d 828, 832 (Minn.App. 1992), that there was no "willful" violation

NOW, THEREFORE, It is—

ORDERED:

1. That the Plaintiff's Motion Requesting Permission to Amend Complaint [Docket No. 96] is GRANTED to the extent of allowing the Plaintiff to plead a claim against Bass, but it is DENIED insofar as the Plaintiff seeks to allege a punitive damages claim against the City of Duluth.

2. That the Plaintiff is directed to file, forthwith, his Amended Complaint, which conforms to the rulings in this Order, and the Defendants are directed to serve an Amended Answer as required by the governing Rules of Civil Procedure.

because the government official had a reasonable belief that the requirements of the MGDPA did not apply, to corroborate the construction we have drawn.