*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1479**

Robert Webber,
Appellant,

vs.

Rod Franks, Responsible Authority Carver County,
Health and Human Services,
Respondent.

**Filed May 6, 2024
Affirmed
Smith, John, Judge**[*]

Hennepin County District Court
File No. 27-CV-22-5447

Robert P. Webber, Shorewood, Minnesota (self-represented attorney)

Ann R. Goering, Erin E. Benson, Timothy P. Anderson, Ratwik, Roszak & Maloney, PA,
St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Ede, Judge; and Smith, John,

Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**SMITH, JOHN**, Judge

We affirm the district court's grant of summary judgment to respondent Rod Franks on appellant Robert Webber's claims for violation of the Minnesota Government Data Practices Act (MGDPA), Minn. Stat. §§ 13.001-.99 (2022), because Webber did not present genuine issues of material fact that any failure to provide Tennessean warnings caused his damages.

## FACTS

Webber sued Franks in his capacity as the responsible authority for Carver County, Health and Human Services (the county). As relevant to this appeal, Webber alleged Tennessen-warning violations by county social workers during a Child in Need of Protection or Support (CHIPS) proceeding and maltreatment investigation. Under the MGDPA, individuals are entitled to a Tennessen warning when a government entity requests "private . . . data concerning the individual." Minn. Stat. § 13.04, subd. 2. A Tennessen warning must include:

> (a) the purpose and intended use of the requested data within the collecting government entity; (b) whether the individual may refuse or is legally required to supply the requested data; (c) any known consequence arising from supplying or refusing to supply private or confidential data; and (d) the identity of other persons or entities authorized by state or federal law to receive the data.

Webber claimed that because of the county's alleged Tennessen-warning violations he lost custody of one of his children (first child) during the CHIPS proceeding. He also argues that because of those violations, the county wrongly determined, after its

maltreatment investigation, that he likely abused another one of his children. As a result, Webber argues he suffered emotional distress and eventually lost his job, entitling him to damages under the MGDPA. *See* Minn. Stat. § 13.08, subd. 1.

During discovery, Webber deposed multiple county social workers. Two social workers stated that they had not provided Webber with Tennessen warnings during phone and email communications. However, one social worker stated that she "did not get the opportunity to give [Webber] a Tennessen warning, because he would not interview with [her]." Webber also deposed a supervisor for the two social workers who agreed that she did not have a reason to believe that the social workers had provided Webber with a complete Tennessen warning. The supervisor stated that one of the social workers had planned to provide a Tennessen warning at a meeting that Webber canceled.

In his own deposition, Webber stated that he shared information with county social workers about how he managed the first child's emotional behavior, and that he believed the social workers were "critical about that." In addition, Webber described mental-health challenges during the county's investigations as impacting his work as a partner at a law firm. The firm removed Webber as a partner in September 2021, which, according to him, stemmed from inappropriate emails he sent at work while under emotional distress, partially due to the CHIPS proceeding and maltreatment investigation. Webber also stated that he suffered reputational loss within professional circles because of the circumstances with his children and him no longer being able to practice law at the firm.

Franks moved for summary judgment, and the district court granted his motion, reasoning in part that Webber failed to establish a genuine issue of material fact about

whether the alleged failure to give Tennessen warnings in violation of the MGDPA caused his damages.

**DECISION**

Webber argues the district court erred in granting Franks's motion for summary judgment because there is a genuine issue of material fact about whether the alleged Tennessen-warning violations caused him actionable damages under the MGDPA.[1]

We review a grant of summary judgment de novo. *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 371 (Minn. 2022). We "will affirm a grant of summary judgment if no genuine issues of material fact exist and if the [district] court accurately applied the law." *Id.* at 371-72. "In determining whether there are genuine issues of material fact," the appellate court views "the evidence in the light most favorable to the nonmoving party . . . and resolve[s] all doubts and factual inferences against the moving parties." *Id.* at 372 (first alteration in original) (quotation omitted). "Fact issues exist when reasonable persons might draw different conclusions from the evidence presented." *Id.* (quotation omitted).

The MGPDA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities." Minn. Stat. §13.01.

---

[1] Webber also argues that the district court erred in its alternative basis for summary judgment: that his claim failed because he sued the responsible authority rather than the county itself. *See Willis v. Jesson*, No. A18-0948, 2019 WL 418542, at *3 (Minn. App. Feb. 4, 2019) (affirming a district court's dismissal of an MGDPA claim on the basis that respondeat superior does not apply to responsible authorities) (a nonbinding case that is cited for its persuasive value only). However, because our decision on the causation issue is dispositive, we do not reach that alternative basis.

When "a responsible authority or government entity . . . violates any provision" of

the MGPDA, they are

> liable to a person . . . who suffers any damage as a result of the
> violation, and the person . . . may bring an action against the
> responsible authority or government entity to cover any
> damages sustained, plus costs and reasonable attorney fees. In
> the case of a willful violation, the government entity shall, in
> addition, be liable to exemplary damages of not less than
> $1,000, nor more than $15,000 for each violation.

Minn. Stat. § 13.08, subd. 1.

Webber claims he is entitled to actual and emotional damages because of the

county's Tennessen-warning violations. [2] But as the above language provides, for Webber

to receive actual or emotional damages under the MGDPA, he must show that he suffered

his damages "as a result" of the social workers not providing him with Tennessen warnings.

*See id.* [3] Typically, causation is a question of fact for a jury to resolve and only becomes a

---

[2] Emotional damages are available under the MGPDA if a plaintiff demonstrates that they "occurred under circumstances tending to guarantee [their] genuineness." *Navarre v. S. Washington Cnty. Schs.*, 652 N.W.2d 9, 31 (Minn. 2002).

[3] Webber also argues that he is entitled to exemplary damages because the social workers willfully violated the MGDPA. *See* Minn. Stat. § 13.08, subd. 1 (providing that a plaintiff is entitled to exemplary damages for a "willful violation . . . in addition" to "damage as a result of the violation"). A "willful violation" is intentional or malicious, not negligent, or inadvertent. *See Backlund v. City of Duluth*, 176 F.R.D. 316, 324-25 (D. Minn. 1997) (interpreting the MGDPA); *see also Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 20 (Minn. App. 2003) (recognizing that the decisions of lower federal courts may "be persuasive and should be afforded due deference"). Here, Webber has not presented a genuine issue of material fact that the social workers acted with intent or malice. To the contrary, one social worker stated that she planned to provide Webber with a Tennessen warning, but that "he would not interview with [her]." Therefore, we determine that Webber's claim for exemplary damages does not survive summary judgment.

question of law when "different minds can reasonably arrive only at one result." *Paidar v. Hughes*, 615 N.W.2d 276, 281 (Minn. 2000).

Webber's causal theory is as follows: (1) that the MGDPA required the county to provide him with Tennessen warnings; (2) the county did not provide those warnings; (3) because he did not receive those warnings, he did not understand the consequences of refusing to cooperate in the CHIPS proceeding and maltreatment investigation, and to the extent that he did cooperate, he did not understand the consequences of providing information to the social workers; (4) as a result, Webber did not participate in the investigations in the manner he otherwise would have participated; (5) therefore, the county was able to remove and keep his first child out of his custody and issue a maltreatment determination against him; and (6) as a result, he suffered emotional trauma, eventually leading to him losing his job and his legal clients. Webber admits that "there are many links" in his causal theory, but he asserts that "a reasonable juror could find causation." We disagree. As explained below, the record shows that Webber's own conduct, rather than the lack of a Tennessen warning, caused his damages.

Regarding the CHIPS proceeding, the record shows that Webber refrained from cooperation after the county and the district court repeatedly informed him that a failure to do so would trigger and prolong separation from his first child. In May 2020, a social worker informed Webber that if he did not cooperate with the county in providing information and engaging in safety planning that the county would seek court intervention to remove his children from his custody. Webber maintained that he would not cooperate and told the social worker that it could involve the district court if it so desired. The district

6

court subsequently issued an ex-parte emergency protective order removing the first child from Webber's custody. The district court cited as a basis for the removal Webber's ongoing refusal to work on safety planning with the county or to allow another caregiver in his home.

Furthermore, shortly after the district court issued its emergency order, it expressly told Webber at an emergency protective care hearing that "there is no chance" he would regain custody "without a safety plan." In late May, the district court issued another order informing Webber that it would be in the first child's best interest to return to Webber only if Webber committed to a safety plan. Finally, in December 2020, when the district court adjudicated the first child as a child in need of protection or services, it noted that Webber had not engaged "in meaningful safety planning," and, among other things, ordered Webber to engage in safety planning in the future.

Regarding the maltreatment investigation, during the emergency protective care hearing, the county described the legal basis and process for the investigation, along with the necessity of safety planning to protect the second child and to prevent additional allegations in the future. While the investigation unfolded, the county emailed Webber that it would need to complete the investigation without his input if he did not cooperate after it granted him additional time to discuss the investigation with an attorney.

Therefore, even when viewing the record in the light most favorable to Webber, we conclude that no reasonable juror could determine that any failure by the county in providing Tennessen warnings caused Webber to lose custody of his first child and to have the county issue the maltreatment determination against him. By extension, Webber cannot

connect the Tennessen warnings to the damages he suffered from his emotional distress and job loss. Because there is no genuine issue of material fact on the issue of causation, the district court did not err in granting summary judgment.

**Affirmed.**