Gerald **LANGELAND, et al., Appellants,**

v.

The **FARMERS STATE BANK OF TRI-MONT, Trimont, Minnesota, et al., defendants and third party plaintiffs, Respondents,**

Arthur T. **Edman, defendant and third party plaintiff, Respondent,**

Welcome-Odin **Farm Chemicals, Inc., etc., et al., Respondents,**

Fred C. **Krahmer, third party defendant, Respondent.**

No. 81–308.

Supreme Court of Minnesota.

May 14, 1982.

---

Paul A. Skjervold, Minneapolis, for appellants.

Erickson, Zierke, Kuderer, Myster & Madsen and Elton A. Kuderer, Fairmont,

for The Farmers State Bank of Trimont, et al.

Gislason, Dosland, Hunter and Malecki, C. Allen Dosland and Steven C. Isaacson, New Ulm, for Edman.

Pflueger & Kunz and Robert R. Pflueger, Ortonville, for Welcome-Odin Farm Chemicals, Inc.

Farrish, Johnson, Maschka & Hottinger and Gerald L. Maschka, Mankato, for Krahmer.

AMDAHL, Chief Justice.

This is an appeal from an order granting motions to dismiss claims of interference with contractual relations and legal malpractice brought against a bank, an attorney, and a judgment creditor by farmowners who alleged that they had lost their right to redeem their farm from foreclosure due to the conduct of these defendants. Appellants also appeal from a denial of their request for attorneys fees.

Appellants Gerald and Marian Langeland had owned and resided upon their 80-acre farm for a number of years. Marian Langeland also owned a life estate in another 80-acre parcel nearby. The Langelands had suffered serious losses on their farming operation, and in 1977 asked respondent Leslie W. Peterson, the president of respondent Farmers State Bank, for financial advice. The Langelands and Peterson decided that the Langelands would rent the farm, and that the bank would lend them money to pay creditors. However, the Langelands were already behind in their mortgage payments, and on September 26, 1977, the Federal Land Bank, which held a first lien in the amount of $21,500, sold the farm for $24,518.77 at a foreclosure sale. Additional creditors acquired judgments thereafter.

Having decided to try to redeem the property within the 1-year redemption period, the Langelands entered into an agreement with the Farmers State Bank, mortgagee on a $50,000 mortgage junior to the Federal Land Bank mortgage, according to which the bank would lend them additional money to pay off the Federal Land Bank and other creditors. The Langelands signed another mortgage for $100,000, which was filed on September 18, 1978, and a $25,000 note.

The bank hired an attorney, respondent Arthur Edman, to handle the redemption of the farm. Edman filed a notice of intention to redeem only with respect to the bank's first mortgage of $50,000. The bank redeemed on the basis of the first mortgage by paying $26,820.26 to the Federal Land Bank and received a redemption certificate dated September 27, 1978.

On September 27, 1978, one of the judgment creditors, Welcome-Odin Farm Chemicals, Inc., which held a judgment of $853.50 against the Langelands, filed a timely notice of intention to redeem. Edman, misinterpreting the redemption statute, assumed incorrectly that each lienholder had 5 days after the end of the year of redemption in which to file a notice of intention to redeem. Consequently, he failed to file a notice for the bank's *junior* mortgage of $100,000, and Welcome-Odin became the holder of the sheriff's certificate.

Upon learning that Welcome-Odin had filed an intention to redeem, the bank entered into negotiations with Welcome-Odin's attorney, respondent Fred Krahmer. At a meeting at the bank on October 3, 1978, Krahmer informed Peterson that the bank had lost its chance to redeem as to the $100,000 mortgage. The bank and Edman claimed that Krahmer had agreed to accept the principal amount of the judgment and reasonable attorneys fees in satisfaction of the claim, and that by doing so, had waived Welcome-Odin's right to redeem. After Krahmer left his office, Peterson called Edman to discuss the matter. Edman advised Peterson to have the Langelands immediately tender the money owed on the judgment. On October 5 Marian Langeland signed a note for the purchase of a cashier's check for $904.71, payable to John Edman (Arthur Edman's son and law partner), attorney for Gerald Langeland. John Edman endorsed the check as follows:

Pay to the order of Fred Krahmer, Attorney for Odin Farm Chemicals, a division of Appleton Farm Chemicals, Inc. in full satisfaction of that judgment in the original amount of $853.50 entered on October 6, 1977, John Edman, Attorney for Gerald Langeland.

When John Edman delivered the check to Krahmer on the same day, Krahmer refused to accept it, stating that he had just redeemed in favor of Welcome-Odin. By tendering $78,623.23 to the sheriff, Krahmer was able to obtain for Welcome-Odin title to the Langelands' property, which was worth approximately $200,000.

Peterson claimed to have sent the Langelands a letter on October 19, 1978, that explained the situation, but the Langelands denied ever having received the letter. Peterson stated that he was unable to contact the Langelands before that time because he was in the hospital. The Langelands claimed to have been unaware that they had lost the property until December 19, when Gerald Langeland went to the bank to borrow some money for Christmas. At that time, Peterson informed him that title to the farm had been lost to a junior judgment creditor. Although Peterson told Langeland that he would get back to him some time between Christmas and New Years Day, the Langelands received no further word from anyone regarding the matter. The Langelands claimed that after they lost the title to their farm, they became ill, had marital problems, incurred difficulty obtaining credit, and that they and their children were publicly embarrassed and humiliated. Gerald Langeland stated that he was unable to work for a few weeks but kept no record of this. Neither Gerald nor Marian sought medical advice or counseling for their problems.

The Langelands commenced suit against the bank, Peterson, Edman, Welcome-Odin, and Krahmer, alleging negligent infliction of emotional distress and tortious interference with contract. The trial court set aside the certificate of redemption that was issued to Welcome-Odin because it was discovered that no such business entity actually existed; Welcome-Odin proved to be merely a division of Appleton Farm Chemicals, Inc., not a separate corporation. Krahmer, who apparently relied on information provided by Welcome-Odin representatives, believed incorrectly that Welcome-Odin was a corporate entity and attempted to redeem in the name of Welcome-Odin Farm Chemicals, Inc.

After the trial court set aside Welcome-Odin's redemption, the Langelands were restored to the ownership of the farm subject to the bank's $100,000 mortgage. On June 2, 1980, the court granted Krahmer's motion for summary judgment regarding the interference with contractual relations claim but retained the Langelands' claim for attorneys fees and expenses.

Prior to the trial, the court ordered the issue of attorneys fees to be severed from the main claim and heard by the court alone. The Langelands' attorney contended that he was entitled to $60,000 in fees, 70% payable by Edman, 20% by Peterson, and 10% by Welcome-Odin and Krahmer. He accepted the case on a contingent fee basis of one-third of the value of the Langelands' land or one-third of the land itself. He contended that the issues raised were novel and complex, and he estimated that he spent about 300 hours on the case. The Langelands had already paid him a retainer of $5,500. With the consent of all parties, the other attorneys involved in this case testified as to what they believed a reasonable fee would be for this matter. All concluded that a reasonable fee would be about $5,000; several commented that $60,000 would be unconscionable. The trial court agreed that a fair fee would be no more than $5,000. The court based this conclusion in part on the fact that the certificate was set aside as a result of the concerted efforts of Edman, Peterson, the bank, and the Langelands' attorney, not by the Langelands' attorney acting alone. The Langelands' motion to recover attorneys fees was denied.

On November 19, 1980, after jury selection and opening statements, the district court granted all defendants' motions for

dismissal of the Langelands' claim for damages. The court also denied the motions of the bank and Peterson for leave to assert a cross-claim against Edman on the ground that with respect to services in connection with the setting aside of the certificate of redemption, Peterson and the bank were volunteers, and nothing that Edman did contributed to any difficulties the bank encountered in that regard.

The record was found to contain no evidence that Edman's failure to redeem contributed to the expenses incurred by Peterson and the bank. In addition, the court denied Welcome-Odin's motion for leave to assert a cross-claim for attorneys fees against Krahmer, first, because Krahmer's error in using the incorrect name in attempting to redeem was due to information given him by a representative of Welcome-Odin; second, because agents of Welcome-Odin were aware of the error; and finally, because the claim, which was made almost 2 years after the suit was brought, appeared to the court to be little more than an afterthought.

This case raises the following issues:

1. May the Langelands recover damages for emotional distress that allegedly resulted from the failure of the bank, the bank's attorney, and its president to redeem the bank's interest in their farm in a timely manner?

2. May the Langelands recover damages from the judgment creditor, Welcome-Odin, who redeemed the farm, and its attorney, Fred Krahmer, for alleged interference with the Langelands' contractual relations with the bank.

3. May the Langelands recover attorneys fees they incurred in conducting litigation to recover their interest in the farm?

1. The Langelands assert that Edman owed them a duty to redeem their property in a timely manner. No such duty may arise, however, unless the existence of an attorney-client relationship is established. See, e.g., Togstad v. Vesely, Otto, Miller & Keefe, 291 N.W.2d 686, 692 (Minn. 1980); Christy v. Saliterman, 288 Minn. 144, 179 N.W.2d 288 (1970). An express attorney-client relationship does not appear ever to have been established between the Langelands and Edman. It is clear from the statements of the parties that none was actually intended. Edman was hired by the bank to redeem the farm; he had also done other work for the bank. In fact, he had never spoken with the Langelands in connection with this matter.

The Langelands have no cause of action under a contract theory, which requires either an express or an implied agreement to hire the lawyer. In Togstad, however, we indicated that an attorney-client relationship could be established, under a negligence theory, without any express agreement. 291 N.W.2d at 693 n. 4. According to this theory, the relationship is created whenever a person seeks and receives legal advice from a lawyer under circumstances in which a reasonable person would rely on the advice. Id.; see 63 Minn.L.Rev. 751, 759 (1979). Here, however, not the Langelands but the bank sought and relied upon Edman's advice. The Langelands argue the fact that Peterson and the bank hired Edman to do legal work for the benefit of the Langelands and the bank, made Edman the lawyer for the Langelands, and that therefore he owed them the duty of performing legal services competently. Appellants also argue that further evidence of the attorney-client relationship was established by the endorsement by "John Edman, Attorney for Gerald Langeland" on the check tendered to Krahmer for the Welcome-Odin judgment. The Langelands were not aware, however, that John Edman had endorsed the check as their attorney. Arthur Edman explained that his law firm had never represented the Langelands, but that the bank, which drew the check, had given John Edman the authority to act for the Langelands. The Langelands relied on Peterson and the bank to save their farm and refinance pursuant to their agreement; the bank relied on Edman to effect the redemption. However, at no time did the Langelands rely on Edman as their attorney. Edman was the *bank's* agent for the purpose

of the redemption, but because of the lack of reliance on the part of the Langelands, little basis exists for a finding that Edman thereby became the Langelands' attorney.

Appellants rely on a New York case, *Schwartz v. Greenfield*, 90 Misc.2d 882, 396 N.Y.S.2d 582 (1977), to support their contention that even in the absence of an attorney-client relationship, when a lawyer gratuitously undertakes to perform a legal service for a third party, he is liable if he does so in a negligent manner that injures the third party. In that case, the attorney for a debtor agreed to file a security agreement for the creditor. He filed it in the wrong place, and as a result the creditor lost the collateral to the bankruptcy trustee. The court, noting that privity of contract was unnecessary, held that

> the transaction in which the defendant's negligence occurred was intended primarily for the benefit of the plaintiff. Harm to the plaintiff from defendant's negligence in failing diligently to file and perfect the security agreement was clearly foreseeable.
>
> \*    \*    \*    \*    \*    \*
>
> The plaintiff dealt with the defendant face to face. The attorney, though in fact engaged by the defendant corporation, undertook a duty to the plaintiff personally. No longer is there a problem of privity of contract. No longer is there the relationship of a third party beneficiary. Granted, that it was initially the duty of the plaintiff to file the papers in order to preserve his position as a secured creditor. Once the defendant voluntarily assumed the duty to file these papers, he had a positive duty to do so.

*Id.* at 885–86, 396 N.Y.S.2d at 584. The instant case differs in several important respects. Although harm to the Langelands was a foreseeable result of Edman's failure to effect a timely redemption, Edman did not deal with them directly, and, more importantly, he did not act gratuitously on their behalf. Instead, he was retained by the bank to protect *its* interests by redeeming the property. The protection of the Langelands' interest in the property

was a secondary matter. The Langelands relied on the bank, not on Edman, to take care of the problem. Edman's duty of due care was owed only to his client, the bank.

Furthermore, no contractual relationship, express or implied, was established between Edman and the Langelands. Even if such a relationship had been established, "[w]e have consistently held, in the absence of specific statutory provision therefor, that extra-contract damages are not recoverable for breach of contract except in exceptional cases where the breach is accompanied by an independent tort." *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979); *see, e.g., Olson v. Rugloski*, 277 N.W.2d 385 (Minn.1979); *Moore v. John E. Blomquist, Inc.*, 256 N.W.2d 518 (Minn.1977); *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775 (1975), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); *Independent Grocery Co. v. Sun Insurance Co.*, 146 Minn. 214, 178 N.W. 582 (1920); *Beaulieu v. Great Northern Railway*, 103 Minn. 47, 114 N.W. 353 (1907).

2. The Langelands' claim against Peterson and the bank has more merit. However, the general rule. regarding the negligent infliction of emotional distress has been that there can be no recovery absent some accompanying physical injury. *See* W. Prosser, *Handbook of the Law of Torts* § 54, at 328–29 (4th ed. 1971). In cases in which physical symptoms occur subsequent to and because of the plaintiff's emotional disturbance, many jurisdictions, including this one, require the plaintiff to have been in some personal physical danger caused by the defendant's negligence before awarding damages for emotional distress. *See Stadler v. Cross*, 295 N.W.2d 552, 553–54 (Minn.1980); *Sanderson v. Northern Pacific Railway*, 88 Minn. 162, 92 N.W. 542 (1902); *Bucknam v. Great Northern Railway*, 76 Minn. 373, 79 N.W. 98 (1899). The only exception to this rule occurs in cases involving a direct invasion of the plaintiff's rights such as defamation, malicious prosecution, or other willful or malicious conduct. *See State Farm Mutual Automobile Insur-*

*ance Co. v. Village of Isle,* 265 Minn. 360, 122 N.W.2d 36 (1963).

The Langelands urge this court to adopt the rule set out in *Jarchow v. Transamerica Title Insurance Co.,* 48 Cal.App.3d 917, 122 Cal.Rptr. 470 (1975). In that case, the court held that the plaintiffs were entitled to recover damages for emotional distress that resulted from a title insurance company's negligent failure to discover two easements on their property. This act of negligence subjected the plaintiffs to considerable litigation and financial hardship. The court held that "courts may adjudicate negligence claims for mental distress when sufficient guarantees of genuinness (sic) are found in the facts of the case—e.g., when the plaintiff has suffered *substantial damage* apart from the alleged emotional injury." *Id.* at 937, 122 Cal.Rptr. at 484 (emphasis in original).

The Langelands' only injury beyond their claimed emotional distress is attorneys fees expended in having the certificate set aside. Were we to adopt the *Jarchow* rule, it is possible that this expense could constitute "substantial damage" sufficient to sustain the additional claim for emotional distress. However, we decline to do so. We have consistently held that no cause of action exists for the negligent infliction of emotional distress absent either physical injury or physical danger to the plaintiff. *See, e.g., Bjordahl v. Bjordahl,* 308 N.W.2d 817 (Minn.1981); *Stadler v. Cross,* 295 N.W.2d 552 (Minn.1980); *Haagenson v. National Farmers Union Property and Casualty Co.,* 277 N.W.2d 648 (Minn.1979); *Okrina v. Midwestern Corp.,* 282 Minn. 400, 165 N.W.2d 259 (1969).

It would appear that the bank was, in fact, negligent. The Langelands dealt directly with Peterson, the bank's agent, with the reasonable expectation that the difficulties in question would be resolved. Edman, acting not as the Langelands' attorney but as the bank's agent, misread a statute and

as a result failed to accomplish a timely redemption of the Langelands' property. Peterson failed to notify the Langelands of the status of the redemption. Nevertheless, the Langelands have not established that the bank's negligence caused them any quantifiable injury. Their interest in their land has been restored to them, subject to the financing arrangements to which they had originally agreed. They have not been forced to leave the community, as they had feared, and their neighbors are now aware of the reason for the temporary loss of the property. Some of their credit, which they admit that they seldom use, also appears to have been restored. We therefore must hold that lacking a showing of injury beyond that allegedly arising from their emotional distress, the Langelands may not recover damages from either the bank or from its president.

3. The cause of action asserted against Krahmer and Welcome-Odin is tortious interference with contractual relations; the act complained of is Krahmer's redeeming the property on behalf of his client, Welcome-Odin. The general rule is that one has a right to be secure in his contracts and to pursue his business free from the interference of others. *See Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892 (1965). A defendant may avoid liability, however, by showing that his actions were justified by a lawful object that he had a right to pursue. *Id.* The Langelands argue that Krahmer and Welcome-Odin had no right to redeem the property because both Krahmer and Welcome-Odin were aware that the Langelands and the bank had entered into a new financing arrangement and because Krahmer had told Peterson that he was interested only in collecting the amount of the judgment, which Krahmer and Welcome-Odin knew to be void because it was in the name of a nonexistent corporation.[1] The trial court found no merit to this claim. For

---

1. The fact that Welcome-Odin was not an actual corporation apparently was known to Krahmer by the time he drew the affidavit of identification, but Krahmer denied having drawn the affidavit to avoid an assignment of the judg-

ment. Instead, he claims that he was "attempting to tie the record together so there would be no confusion as to why there were different names."

Krahmer to have told Peterson that all he wanted was the amount of the judgment and then immediately to redeem the property with the sheriff was ethically and morally questionable. Nevertheless, the Langelands owed Welcome-Odin a debt that it was entitled to collect, and the redemption of real property is an entirely legal method of collecting a debt. Since Krahmer and Welcome-Odin acted in furtherance of a superior legal right, the Langelands have no claim against them for wrongful interference. *Bennett v. Storz Broadcasting Co.*, 270 Minn. at 532, 134 N.W.2d at 897. Furthermore, it is apparent that any injuries that the Langelands suffered would have been proximately caused by Edman's failure to redeem the bank's interest on time, not by Krahmer's attempted redemption, since the bank's interest would have had priority over that of Welcome-Odin, a junior judgment creditor, if Edman had redeemed in a timely manner.

 4. We hold that the Langelands are entitled to recover from the bank reasonable attorneys fees that they incurred in having the certificate of redemption set aside. As a rule attorneys fees are not recoverable in litigation absent a specific contract or statutory authorization. *See Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71 (Minn.1981); *Fownes v. Hubbard Broadcasting, Inc.*, 310 Minn. 540, 246 N.W.2d 700 (1976). The United States Supreme Court has held that "it is not for us to invade the legislature's province" by awarding attorneys fees without statutory authorization. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 271, 95 S.Ct. 1612, 1628, 44 L.Ed.2d 141 (1975). An exception to this rule arises in situations in which the defendant's wrongful act thrusts the plaintiff into litigation with a third person. *See First Fiduciary Corp. v. Blanco*, 276 N.W.2d 30, 34 (Minn. 1979); *Dworsky v. Vermes Credit Jewelry, Inc.*, 244 Minn. 62, 70, 69 N.W.2d 118, 124 (1955). The district court held that the Langelands were not entitled to an award of attorneys fees on the ground that Krahmer and Welcome-Odin, who had procured the certificate and judgment, were not

third parties. We disagree. Edman redeemed on the bank's first mortgage; Krahmer then redeemed on behalf of Welcome-Odin. Because Edman failed to redeem with respect to the bank's superseding second mortgage, Welcome-Odin was able to take the property. If Edman had redeemed on time, Welcome-Odin would not have been able to obtain an interest in the property and the Langelands would not have been forced to enter into litigation to have Welcome-Odin's certificate set aside. Edman's misinterpretation of the redemption statute was the direct and proximate cause of the Langelands being forced to incur attorneys fees to protect their interest in the property; they would have had no litigation with Welcome-Odin otherwise. Although the district court held that the Langelands were not entitled to attorneys fees, it stated that a fair charge for services in connection with setting aside the certificate would not *exceed* $5,000.00. We remand this matter for a determination of a proper award of attorneys fees payable by the bank.

Affirmed in part; reversed in part; and remanded.