**Albert James CONANT, Plaintiff,**

v.

**CITY OF HIBBING, Defendant.**

**No. CIV. 99–303 RLE.**

United States District Court,
D. Minnesota.

Nov. 8, 2000.

Albert James Conant, Pengilly, MN, pro se.

Kurt B Glaser, Glaser & Assoc, St. Paul, MN, Albert James Conant.

Larry Charles Minton, Minton Law Office, Hibbing, MN, for Hibbing Civ. Service Com'n, City of Hibbing.

## MEMORANDUM ORDER

ERICKSON, United States Magistrate Judge.

### I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, made in accordance with the provisions of Title 28 U.S.C. § 636(c), upon the Motion of the Defendant City of Hibbing ("Hibbing") for Summary Judgment.

A Hearing on the Motion was conducted on June 1, 2000, at which time Hibbing appeared by Larry C. Minton, Esq., and the Plaintiff Albert James Conant ("Conant") appeared by Kurt B. Glaser, Esq.

For reasons which follow, Hibbing's Motion for Summary Judgment is granted.

### II. Factual and Procedural Background

In December of 1993, Conant applied for a job with Hibbing as a General Laborer. According to Conant, as he and his fellow applicants progressed through the selection process, they were assigned points, in order to aid in the selection of the deserving candidate. Following the selection process, Conant was given one of the three highest point totals, and was, therefore, offered a position, subject to a pre-employment physical examination.

Conant's pre-employment physical examination was conducted by Dr. Charles W. Decker. Dr. Decker is a physician who had examined Conant, for a back injury, several years prior to Conant's application for the General Laborer position. See, *Deposition of Charles W. Decker*, at 13. As a part of the examination, Dr. Decker met with Conant for about fifteen minutes, during which time no physical tests were conducted. *Id.* at 12–13. As explained by Dr. Decker, the examination consisted primarily of x-rays, lab tests, an eye exam, a hearing exam, blood pressure measurements, and physical measurements. *Id.* at 12. In addition, Dr. Decker explained his role in the examination, as follows:

> I would ask the * * * prospective employee about their [sic] general health. I would ask them if they have any problems with arms, legs or their back or if they've had any previous to this. I would ask them if they're on any medications and, if so, what they are. I'd ask them are they under a doctor's care for any condition or disease. If so, what is it. I'd [ask] them if they've ever had any serious illness such as heart trouble or ulcers or diabetes and so on. I'd ask them if they've had any previous surgery.

*Id.* at 12–13.

Following this examination, on December 10, 1993, Dr. Decker issued an employment recommendation to the Defendant

that restricted Conant from lifting over 30 pounds, and from repeated squatting or bending. See, *Affidavit of Larry C. Minton, Ex. A.*

During his deposition, Dr. Decker admitted that, prior to the examination, he was never given a copy of the Essential Job Functions for the General Laborer Position. See, *Decker Dep.*, at 10–11. However, according to Dr. Decker, he was aware of the general nature of the job, and the activities that were involved, because of his experience examining similar applicants,[1] and his discussions with supervisors and employees of the Defendant. *Id.* at 11. As such, Dr. Decker's conclusions concerning Conant's work capacity were based primarily upon the doctor's knowledge of the job's requirements, and Conant's previous medical history. *Id.* at 12–13; 18–19.

As a result of the examination, Dr. Decker concluded that work restrictions were appropriate for Conant, because Conant had suffered a back injury during his prior employment as a welder. As explained by Conant:

> The injury was substantial and [Conant] received a permanent worker compensation rating of 10.5% disability for his back for purposes of registering with the Minnesota Second Injury Fund. *Conant* 93:20—94:14. Mr. Conant had to temporarily change professions. He had a high school GED and had only known manual labor jobs. He was a self-taught welder and almost always worked two jobs. * * * After injury forced him to leave his welding job, he ran a bait store and tried being a realtor. Eventually the physical rigors of the bait store required him to leave that job, and real estate did not work out. He learned to live and work with the ever present pain from his back injury. *Conant* 5:3—25:5, generally; 45:4—46:9.

In 1992, two years prior to the 1994 pre-employment medical examination re-quired by the City, Mr. Conant stopped seeing Dr. Decker. Until that time Mr. Conant saw him over 100 times over a two-year period for his back injury. * * * Dr. Decker's last notes about Mr. Conant's medical limitations in the file from 1992 included that he should not lift over 30 pounds and should not do any repeated squatting or bending. Those restrictions were only in place for six-months. *Decker* 21:1—22:8; discussing Exhibit B, bates pg. 394. Mr. Conant stopped seeing Dr. Decker in early 1992. *Conant* supra; 38:1—18. He began an intensive course of exercise which included swimming, walking, weight-lifting and racket ball. *Conant* 37:9—15; 41:18—43:23. His condition improved significantly to the point where he was able to resume his welding profession and took an additional job in the Twin Cities making pontoons to support his family. Lifting was integral to his job. *Conant* 45:4—46:9. Eventually he applied for the position with the City of Hibbing. *Conant* 48:15—53:13.

The Plaintiff is currently employed in a welding job which requires sometimes very heavy lifting, and repeated squatting and bending. In the six years since being denied employment with the City of Hibbing he is, physically, doing fine, and able to do his job. *Conant* 45:4—46:9.

*Plaintiff's Reply,* at 9–10.

Following his pre-employment evaluation by Dr. Decker, Conant scheduled another appointment in order to determine whether Dr. Decker would rescind his work restrictions. At that appointment, Dr. Decker suggested that Conant seek a Function Capacities Examination ("FCE") in order to test his physical abilities. Consequently, Conant went to Physical Therapist Kevin Schulte ("Schulte") to have the appropriate testing performed. After subjecting Conant to testing, which involved a variety

---

**1.** Dr. Decker uses the same format to examine six to twelve of the Defendant's applicants each year. See, *Decker Dep.,* at 9–10.

of physical tests, and range of motion exercises, Schulte concluded that Conant was capable of performing all of the essential job functions that had been outlined by the Defendant, for the position of General Laborer. See, *Minton Aff., Ex. C.*

Thereafter, following the receipt of the results of Conant's FCE, a representative of the Defendant, Jeri Brysch ("Brysch") spoke with Schulte. During the conversation, Schulte advised that Conant's history of back problems could potentially resurface after three months of employment in the General Laborer Position. *Minton Aff., Ex. D.* As such, in spite of Schulte's opinion, that Conant was physically capable of performing the duties required of a General Laborer, the Defendant made the decision not to hire him.

Following this decision, on January 4, 1994, the Defendant sent Conant a letter, which informed him that he was not qualified for the position of General Laborer. See, *Affidavit of Kurt B. Glaser, Ex. E.* The letter, stated that Dr. Decker had advised the Defendant that Conant had a lifting limitation of 30 pounds, and that he was prohibited from engaging in repeated squatting or bending. *Id.* The letter went on to state:

> The essential functions of the classification of general laborer require lifting in excess of 30 pounds and repeated squatting or bending. We have investigated the possibility of reasonable accommodation to structure the position in such a way as to avoid these requirements, but have determined that no such reasonable accommodation is feasible without undue hardship to the City. Specifically, removing the requirements of lifting over 30 pounds and repeated squatting and bending would negate the essential purpose of the position. Therefore, our conclusion at this point, based on present information, is that you are not qualified for the position of general laborer

> and we will be unable to proceed with the offer of employment to you.

*Id.*

On October 24, 1994, Conant filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging disability discrimination. Prior to this filing, Conant never requested that the Plaintiff treat him or classify him as a disabled person. Also, Conant never requested that the Defendant accommodate his disability during the course of the employment process. Subsequently, on September 18, 1997, the EEOC issued a probable cause determination as to Conant's charge of disability discrimination and, on November 24, 1998, the United States Department of Justice issued a Notice of Right to Sue.

On February 22, 1999, Conant filed his Complaint in this matter, which alleges that the Defendant violated the Americans with Disabilities Act ("ADA"). See, *Complaint [Docket No. 1].* Thereafter, on April 28, 1999, Conant filed an Amended Complaint which, once again, asserted that the Defendant violated the ADA, while adding a claim of negligent infliction of emotional distress. See, *Amended Complaint, [Docket No. 2].* The Defendant has moved for Summary Judgment on all of Conant's claims, and Conant opposes the Motion.

### III. *Discussion*

A. *Standard of Review.* Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. *Krentz v. Robertson,* 228 F.3d 897, 902 (8th Cir.2000); *Curry v. Crist,* 226 F.3d 974, 977 (8th Cir.2000); *Carter v. St. Louis Univ.,* 167 F.3d 398, 400 (8th Cir.1999).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the nonmoving party. See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Herring v. Canada Life Assurance*, 207 F.3d 1026 (8th Cir. 2000); *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir.1998); *Dodd v. Runyon*, 114 F.3d 726, 729 (8th Cir.1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." *Rule 56(e), Federal Rules of Civil Procedure;* see also, *Anderson v. Liberty Lobby, Inc.*, supra at 256, 106 S.Ct. 2505; *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir.1999); *Jaurequi v. Carter Manufacturing Co.*, 173 F.3d 1076, 1085 (8th Cir.1999). Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, supra at 322, 106 S.Ct. 2548; see also, *Hammond v. Northland Counseling Center, Inc.*, 218 F.3d 886, 891 (8th Cir.2000); *Greer v. Shoop*, 141 F.3d 824, 826 (8th Cir.1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, supra at 323, 106 S.Ct. 2548; see also, *Bell Lumber and Pole Co. v. United States Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir.1995); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir.1995); *Settle v. Ross*, 992 F.2d 162, 163 (8th Cir.1993).

B. *Legal Analysis.* As noted, Conant has asserted claims under the ADA, and under Minnesota's common law. Since they involve different proofs, we examine his claims separately.

1. *Conant's ADA Claim.* Conant alleges that he was not hired by the Defendant for the General Laborer position, as a consequence of the Defendant's belief that he was "disabled" within the meaning of the ADA.

■ a. *Standard of Review.* The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." *Title 42 U.S.C. § 12112(a).* Since Conant has not identified any direct evidence of discrimination, his ADA claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas* and its progeny. See, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In order to establish a prima facie case of discrimination, under the ADA, a plaintiff must show:

1. that she had a disability within the meaning of the ADA;

2. that she was qualified to perform the essential functions of her job, with or without reasonable accommodation; and

3. that she suffered an adverse employment action because of her disability.

*Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 959–60 (8th Cir.2000); citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir.1999)(en banc).

A Plaintiff may prove a "disability" by showing that he either (1) has a disability

as defined under the ADA; (2) suffers from a history of such a disability; or (3) is perceived by his employer as having such a disability. *Title 42 U.S.C. § 12102(2)(A)-(C); Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 948 (8th Cir.1999); *Gutridge v. Clure,* supra at 900; *Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1206 (8th Cir.1997).

A "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Title 42 U.S.C. § 12102(2).* "According to the regulations that guide the interpretation of the ADA, an impairment is 'substantially limiting' if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population." *Taylor v. Nimock's Oil Co.,* supra at 960, citing *29 C.F.R. § 1630.2(j)(1)(i)-(ii).* "Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. § 1630.2(j), as well as sitting, standing, lifting, and reaching." *Id.*

While working does constitute a major life activity, a finding that a plaintiff is substantially limited in working requires a showing that his overall employment opportunities are limited. See, *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996). Thus, the employer would have to regard that plaintiff as limited in an overall working capacity. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *29 C.F.R. § 1630.2(j)(3)(i)(1997); Greer v. Emerson Electric Co.,* 185 F.3d 917, 921 (8th Cir.2000), citing and quoting, *Snow v. Ridgeview Medical Ctr.,* supra at 1206. Rather, the impairment must prevent the Plaintiff from performing an entire class or broad range of jobs as compared to the average person possessing comparable training, skills, and abilities. See, *Aucutt v. Six Flags Over Mid–America, Inc.,* supra at 1319, citing *29 C.F.R. § 1630.2(j)(3)(I);* see also, *Fjellestad v. Pizza Hut of America, Inc,* supra at 949.

The following factors are considered in determining whether a person is substantially limited in a major life activity: 1) the nature and severity of the impairment; 2) its duration or anticipated duration; and 3) its long-term impact. *Id;* see also, *Fjellestad v. Pizza Hut of America, Inc,* supra at 949. Finally, "the determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis." *Fjellestad v. Pizza Hut of America, Inc,* supra at 949, citing *Doane v. City of Omaha,* 115 F.3d 624, 627 (8th Cir.1997), cert. denied, 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

b. *Legal Analysis.* As noted, Conant contends that he was not hired by the Defendant for a General Laborer position, because he was regarded as disabled. However, on the Record before us, it appears that Conant is not "disabled," nor was he regarded as being "disabled," by the Defendant, within the meaning of the ADA and, therefore, he has failed to make out a *prima facia* case of employment discrimination.

First, Conant has not presented evidence to demonstrate that he is disabled, since his back injury has not substantially impaired his ability to engage in major life activities. As noted, the Equal Employment Opportunity Commission Regulations define "major life activities" as including functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Fjellestad v. Pizza Hut of America, Inc,* supra at 949, citing *29 C.F.R. § 1630.2(i)(1998).* Here, Conant testified that, prior to seeking employment from the Defendant, his condition improved significantly to the point where he was able to resume the activity of welding. See, *Deposition of Albert J. Conant,* at 45–46. In addition, Conant admits that he is currently employed in a welding job which requires very heavy lifting, and repeated

squatting and bending. See, *Plaintiff's Reply*, at 10. Conant has not, however, presented evidence to demonstrate that he is substantially limited in a major life activity.

■ While we have no doubt that a serious back injury can severely cripple the ability of an individual to obtain employment of any kind, that is not the evidence that Conant has proffered here. Rather, Conant has been encumbered by a 30–pound lifting restriction, and a limitation on repeated acts of squatting and bending. Our Court of Appeals has determined that a lifting restriction of 25 pounds was not sufficient to demonstrate that the claimant was unable to perform a class of jobs. See, *Aucutt v. Six Flags Over Mid–America, Inc.*, supra at 1319; *Johnson v. Otter Tail County*, 2000 WL 1229854 *4 (D.Minn., July 24, 2000). Simply put, "a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA." *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir.1998), cert. denied, 526 U.S. 1113, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999), citing and quoting, *Snow v. Ridgeview Medical Center*, supra at 1207; see also, *Taylor v. Nimock's Oil Co.*, supra at 961; *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 617 (8th Cir. 1997); *Wild v. Minntech Corp.*, 187 F.3d 645, 1999 WL 617442 *2 (8th Cir., August 13, 1999)(Plaintiff "cannot demonstrate that a weight restriction of 45–50 pounds and a work-week restriction of 45 hours per week limit his ability to perform a class of jobs.") [Table Decision].[2]

We recognize that Conant was subjected to a lifting restriction, in conjunction with a limitation on his repetitive bending and squatting, but such a combination of constraints, without a showing that they excluded Conant from a broad spectrum of jobs, is an insufficient showing to qualify him as being "disabled" within the meaning of the ADA. See, *Helfter v. United Parcel Service, Inc.*, supra at 617–18 (inability to perform sustained repetitive action with either hand and heavy lifting were not enough to raise issue of fact about substantial limitation in life activity of work). Absent from the Record before us is any showing that the Plaintiff had an impairment which substantially limited a major life activity. Indeed, the Plaintiff flatly admits that he was not precluded from performing the job, as a General Laborer, for which he applied with the Defendant.[3]

■ Beyond having failed to show that he was actually "disabled," Conant has also been unable to show that the Defendant regarded him as being disabled, within the meaning of the ADA. According to Conant, after he was examined by Dr. Decker, the Defendant regarded him as disabled because he was perceived to have an impairment that limited his lifting to those objects which weighed less than 30 pounds, and that required him to avoid repeated squatting or bending. See, *Plaintiff's Reply*, at 14. According to Conant, "if these restrictions were true[,] * * * he could not lift his child, * * * digging, or gardening would be severely limited[,] * * * [and]

2. See, *Anastasoff v. United States*, 223 F.3d 898, 905 (8th Cir.2000), which invalidated the Eighth Circuit's Rule 28A(I), that authorizes the issuance of unpublished opinions as non-precedential, and which extended precedential weight to a prior, unpublished opinion.

3. Moreover, because the duration of Conant's medical condition was limited, it does not qualify as a disability under the ADA. "ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not 'substantially limit' a person's

major life activities." *Gerdes v. Swift–Eckrich, Inc.*, 949 F.Supp. 1386, 1397 (N.D.Iowa 1996); *29 C.F.R. § 1630.2(j)*. While it is clear that the Conant's medical condition was not "minor," nevertheless, it interfered with his ability to perform his job responsibilities for only a limited period of time. In fact, by Conant's own account, he actively pursued physical job responsibilities subsequent to his back injury. See, *Conant Dep.*, at 45–46. Therefore, to the extent that Conant claims to have a physical impairment that substantially limits one or more of his major life activities, his claim must fail as a matter of law.

[e]ven taking out the trash could be impossible." *Id.* Therefore, Conant contends that the Defendant's misperception of his physical capacities would severely limit his employment prospects such that the Defendant's stated concern over his medical condition exceeded the actual severity of that condition. The result, according to Conant, was that the Defendant regarded him as having a medical condition that satisfied the requisite severity, and duration, of the ADA's definition of a "disability."

■ First, we note that an employer's mere awareness of an employee's medical condition is not sufficient to survive a properly supported Motion for Summary Judgment. See, *Olson v. Dubuque Community School Dist.*, 137 F.3d 609, 612 (8th Cir.1998); *Roberts v. Unidynamics Corp.*, 126 F.3d 1088, 1091–92 (8th Cir. 1997); *Webb v. Mercy Hospital*, 102 F.3d 958, 960 (8th Cir.1996); *Aucutt v. Six Flags Over Mid–America, Inc.* supra. To successfully make a *prima facie* case, the Plaintiff must present some evidence, upon which a reasonable Juror could conclude that the Defendant considered the Plaintiff to be disabled within the meaning of the ADA. While, indisputably, the Defendant concluded, rightly or wrongly, that Conant was unable to perform the essential duty functions of the job for which he applied, the Record is bereft of any showing that the Defendant "regarded [Conant's] impairment as substantially limiting any major life activity, 'such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sit-

ting, standing, lifting, reaching or working.'" *Weber v. Strippit, Inc.*, 186 F.3d 907, 915 (8th Cir.1999). To be sure, the Defendant considered Conant as limited in his capacity to lift but, as we have previously noted, "a general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability within the meaning of the ADA." *Snow v. Ridgeview Medical Center,* supra at 1207.

In effect, Conant would have us apply the wrong test for perceived disabilities—the test the Court rejected, in *Weber,* as follows:

. Weber contends that the test for perceived disability is whether defendant treated plaintiff adversely because of his or her feelings about the plaintiff's physical or mental impairment. This is not the test. Rather the test is whether defendant treated plaintiff adversely because it regarded him as having an impairment **that substantially limits one or more major life activities.**

*Weber v. Strippit, Inc.*, supra at 915 [emphasis in original].

Quite simply, Conant presents nothing which so much as suggests that the Defendant considered him "to be disabled and unable to work." *Taylor v. Nimock's Oil Co.*, supra at 961. Rather, the evidence presented shows no more than that the Defendant considered Conant to be unable to fully satisfy the physical requirements of a single job, and that is insufficient, as a matter of law, to constitute a "disability," under the ADA.[4]

Most recently, in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489, 119 S.Ct.

---

4. Conant misinterprets the ADA as affording a job applicant a cause of action for disability discrimination, whenever the applicant fails a physical examination which the employer requires. As we have detailed in the text of this Order, such a test has been repeatedly rejected by our Court of Appeals, and the United States Supreme Court. To burden the ADA with claims which permit no responsible showing, that the claimant suffers from an impairment which substantially limits a major life activity, dilutes the palliative effect of that legislation in remedying discrimination against the truly disabled.

For the same reason, we find Conant's reliance upon the recent decision of the Court of Appeals for the Ninth Circuit, in *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063 (9th Cir. 2000), to be misplaced. There the Court considered the singular question of whether the "direct threat" defense, which the ADA affords an employer, see *Title 42 U.S.C. § 12113(a)*, extends to threats against one's self, in addition to threats against co-workers. As a plain reading of the opinion makes clear, the condition precedent to the consideration of such a defense is a determination that the individual in question is "disabled." The lan-

2139, 144 L.Ed.2d 450 (1999), the Supreme Court recognized that a plaintiff could demonstrate that he was "regarded as" disabled, by establishing that:

(1) a covered entity mistakenly believe[d] that [the plaintiff] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believe[d] that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Id.;* see also, *Shipley v. City of University City,* 195 F.3d 1020, 1023 (8th Cir.1999). Here, Conant has advanced no such showing. As the Supreme Court explained in *Sutton:*

To be substantially limited in the major life activity of working, then one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton v. United Air Lines, Inc.,* supra at 490, 119 S.Ct. 2139.

Our Court of Appeals has emphasized that "the ADA is concerned with preventing substantial personal hardship in the form of significant reduction in a person's real work opportunities." *Fjellestad v. Pizza Hut of America, Inc.,* supra at 954, quoting *Webb v. Garelick Manufacturing Co.,* 94 F.3d 484, 488 (8th Cir.1996). "A Court must ask 'whether the particular impairment constitutes for the particular person a significant barrier to employment'" *Id.,* quoting *Webb v. Garelick Manufacturing Co.,* supra. "Finding that an individual is substantially limited in his or her ability to work requires a showing that his or her overall employment opportunities are limited." *Id.* at 955, citing *Miller v. City of Springfield,* 146 F.3d 612, 614 (8th Cir. 1998). This Conant has failed to do.

■ Nor can we accede to Conant's last argument—that the Defendant discriminated against him because he had a record of a disability—because he has not presented any such record. Certainly, Conant has demonstrated that Dr. Decker imposed lifting restrictions upon him, but those restrictions did not substantially limit Conant's major life activities. "In order to have a record of disability under the ADA, a plaintiff's medical documentation must show that he has a history of, or has been misclassified as having, a physical or mental impairment that substantially limits one or more major life activities." *Weber v. Strippit, Inc.,* supra at 915, citing *29 C.F.R. § 1630.2(k).* Since we have concluded, as a matter of law, that Conant is not actually disabled, within the meaning of the ADA, and since Conant has failed to demonstrate that the Defendant was under the belief, based upon any medical records or reports made known to it, that Conant was "disabled" within the meaning of the ADA, his claim of disability must fail on this ground as well, and Summary Judgment is entered, in favor of the Defendant, on Conant's ADA claim.[5]

guage of the defense provides that "[i]t may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit **to an individual with a disability** has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required·under this subchapter." *Title 42 U.S.C. § 12113(a)* [Emphasis supplied]. Here, we have found, under governing precedent within this Circuit, that Conant is not disabled, within the meaning of the ADA, so

*Echazabal,* and its analysis of the "direct threat" defense are inapposite here.

5. Conant also argues that the Defendant violated the ADA by performing a medical examination, and by making medical inquiries that were not job-related. These arguments are wholly without merit. The ADA limits the scope of information that employers may seek, and disclose, concerning an employee's medical condition. See, *Title 42 U.S.C. § 12112(d).* "Subsection 12112(d)(3) permits employers to require a medical examination of a prospective employee only after an offer of employment has been made, and permits

2. *Conant's Claim for Negligent Infliction of Emotional Distress.* According to Conant, as a result of the Defendant's purported failure to adhere to the requirements of the ADA, he suffered severe emotional distress. As was recently explained by the Minnesota Supreme Court, a viable negligent infliction of emotional distress claim exists only under the following circumstances:

First, a plaintiff who suffers a physical injury as a result of another's negligence may recover for the accompanying mental anguish. *Langeland v. Farmers State Bank of Trimont*, 319 N.W.2d 26, 31 (Minn.1982). Second, a plaintiff may recover for negligent infliction of emotional distress when physical symptoms arise after and because of emotional distress, if the plaintiff was actually exposed to physical harm as a result of the negligence of another (the "zone-of-danger" rule). *K.A.C.*, 527 N.W.2d at 559; *Langeland*, 319 N.W.2d at 31; *Stadler v. Cross*, 295 N.W.2d 552, 554 (Minn.1980). Finally, a plaintiff may recover emotional distress damages when there has been a "direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious conduct." *State Farm Mut. Auto. Ins. Co. v. Village of Isle*, 265 Minn. 360, 368, 122 N.W.2d 36, 41 (1963); see also, *M.H. v. Caritas Family Services*, 488 N.W.2d 282, 290 (Minn.1992); *Hubbard*, 330 N.W.2d at 437–38; *Langeland*, 319 N.W.2d at 31–32.

*Lickteig v. Alderson, Ondov, Leonard, & Sween, P.A.*, 556 N.W.2d 557, 560 (Minn. 1996).

Here, the first two theories of recovery, as outlined by *Lickteig*, are not available to Conant.

First, Conant is not seeking to recover for emotional distress that was suffered in conjunction with any physical injury. Further, Conant does not allege that he suffered emotional distress while being exposed to an actual threat of physical harm and, therefore, he does not seek recovery under the "zone-of-danger" doctrine. Rather, Conant contends that his rights were violated when the Defendant failed to accommodate his disability, as required by the ADA, and when it failed to keep a record of its actions as required by Minnesota Statutes Section 15.17(1).[6] According

---

them to condition a final offer of employment upon the results of the examination only under certain circumstances, including the condition that any information obtained be 'treated as a confidential medical record.'" *Cossette v. Minn. Pwr. & Light*, 188 F.3d 964, 968 (8th Cir.1999). "Subsection 12112(d)(4), meanwhile, prohibits employers from requiring current employees to undergo medical examinations absent a showing of job-relatedness and business necessity." *Id.* Here, in his Memorandum, Conant expressly admits that Decker's medical examination took place subsequent to the Defendant's initial offer of employment to him. See, *Plaintiff's Reply to Defendant's Motion for Summary Judgment*, at 2. Further, it is plain that Dr. Decker's medical examination was related to the physical rigors inherent in the General Laborer position. "An employer urging a business necessity defense must validate the test or exam in question for job-relatedness to the specific skills and physical requirements of the sought-after position." *Belk v. Southwestern Bell Telephone Co.*, 194 F.3d 946, 951, citing *Smith v. City of Des Moines, Iowa*, 99 F.3d 1466, 1475 (8th Cir.1996) (Heaney, J., concurring in part and dissenting in part). "Furthermore, 'an examiner must consider meaningful work-related information, including the type of activity to be performed [and] the level and duration of effort required.'" *Id.*, citing *Smith v. City of Des Moines, Iowa*, supra.

As outlined by the Defendant, the "essential functions for the classification of general laborer requires lifting in excess of 30 pounds and repeated squatting or bending." *Glaser Aff., Ex. E.* No evidence has been presented to dispute this assertion and, quite obviously, a medical examination, such as that which was conducted by Dr. Decker, is related to an employer's interest in assessing a prospective employee's ability to safely perform the physical demands of a specific job. Consequently, we find no merit to these asserted procedural violations of the ADA.

6. Minnesota Statutes Section 15.17(1) states, in pertinent part, as follows:

to Conant, he suffered, as a result of the Defendant's actions, a direct invasion of his rights, such as that which would constitute slander, libel, malicious prosecution, seduction, or other similarly willful, wanton, or malicious conduct. We disagree.

First, since Conant was not disabled, was not regarded as disabled, and did not have a record as being disabled, under the ADA, he was not entitled to protection under the ADA and, therefore, he was not entitled to any accommodation under that Act. See, e.g., *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995) (noting that an individual must be disabled within the meaning of the ADA in order to establish a claim). Consequently, Conant's underlying ADA claim is without merit and, necessarily, his dependent claim for negligent infliction of emotional distress must also fail. See, *Lickteig v. Alderson, Ondov, Leonard, & Sween, P.A.*, at 560 (noting that, in the "willful conduct" category of emotional distress claims, emotional distress is only an element of the damages arising from an intentional tort that constitutes a direct violation of the plaintiff's rights, such as defamation, and therefore, cannot stand alone); see also, *Doan v. Medtronic, Inc.*, 560 N.W.2d 100, 106–107 (Minn.App.1997); *Bohdan v. Alltool Mfg., Co.*, 411 N.W.2d 902, 907 (Minn. App.1987). Since there has been no direct invasion of Conant's legal rights, there is no underlying act upon which to base a claim for a negligent infliction of emotional distress.

■ In addition, even if the Defendant were guilty of violating Section 15.17(1), such a violation would provide no basis for a negligent infliction of emotional distress claim. Where, as here, there is no physical manifestation of distress, a plaintiff claiming a negligent infliction of emotional distress may proceed if the defendant has directly invaded the plaintiff's legal rights, such as in cases of defamation, malicious prosecution, or willful misconduct. See,

*Hayes v. Blue Cross Blue Shield of Minnesota, Inc.*, 21 F.Supp.2d 960, 977 (D.Minn.1998); *Covey v. Detroit Lakes Printing Co., a Div. of Forum Pub. Co.*, 490 N.W.2d 138, 144 (Minn.App.1992). Nevertheless, even under this theory of emotional distress, a plaintiff must prove that the Defendant engaged in willful, wanton, or malicious conduct. See, *Lickteig v. Alderson, Ondov, Leonard, & Sween, P.A.*, supra at 560; *Hayes v. Blue Cross Blue Shield of Minnesota, Inc.*, supra at 977 (noting that the challenged conduct must be extreme and outrageous, and intentional or reckless). In other words, the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Haagenson v. National Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 n. 3 (Minn.1979).

Here, Conant merely alleges that the Defendant failed to keep records, which would be necessary to the maintenance of an accurate knowledge of its official activities. In our considered view, the technical violation of a record-keeping Statute, such as Section 15.17, fails to sustain a claim for emotional distress, which is intended to rectify the most abominable of human acts. Compare, *Lickteig v. Alderson, Ondov, Leonard, & Sween, P.A.*, supra at 560 (noting that the conduct giving rise to a purported breach of contract fails to support an award of emotional distress damages on its own). Here, the Defendant's purported statutory violation cannot be characterized as heinous, contemptible, abhorrent, or the like, but rather, it merely represents the technical failure of the Defendant to adhere to the ministerial, or administrative duties that are required of a State entity. Awarding damages for emotional distress in such a milieu would be at great variance with those types of human conduct that, quite properly, warrant relief under such a

All officers and agencies of the state, counties, cities, towns, school districts, municipal subdivisions or corporations, or other public authorities or political entities within

the state, hereinafter "public officer," shall make and preserve all records necessary to a full and accurate knowledge of their official activities.

cause of action. If the Minnesota Legislature had intended to create such a legal claim, it plainly had the opportunity to do so within the provisions of that, or some other State Statute.[7] "[W]e should not enact, through statutory construction, what the Legislature has, by reasonable implication, refused to legislate on its own." *Backlund v. City of Duluth*, 176 F.R.D. 316, 322 (D.Minn.1997). Therefore, the claim having no basis in fact or at law, we also grant the Defendant's Motion for Summary Judgment on Conant's emotional distress claim.

NOW, THEREFORE, It is,—

ORDERED:

1. That the Defendant City of Hibbing's Motion for Summary Judgment [Docket No. 13 and Docket No. 21] is GRANTED.

2. That the Plaintiff's Motion to Extend the Time To Amend The Complaint To Add A Claim For Punitive Damages [Docket No. 27] is DENIED, as moot.

3. That the Clerk of Court enter Judgment for the Defendant.

---

**7.** We should make clear what Conant's claim is not. Since it has not been pled, we have no reason to believe that Conant was, somehow, asserting a claim of file destruction under the Minnesota Government Data Practices Act ("MGDPA"). See, e.g., *Backlund v. City of Duluth*, 176 F.R.D. 316 (D.Minn.1997)(addressing a destruction of City records claim, in an employment context, under the MGDPA). Nor has the Plaintiff pled an action—if one were permitted—under Minnesota Statutes Section 8.31, Subdivision 3a, the Minnesota "Private AG" Statute. See, *Ly v. Nystrom*, 615 N.W.2d 302, 311 (Minn.2000). We do not suggest that any claim would be legally viable, under either statutory rubric, but merely take this means of explaining that our analysis is limited to only the claims that Conant has pled.